The Honorable Judy Showalter State Representative, 78th District 1917 Simpson Avenue Winfield, Kansas 67156
Dear Representative Showalter:
You request our opinion regarding K.S.A. 12-5040, which requires local governments to make available to certain retired employees and their dependents access to group health care benefits. You inquire whether a local government may terminate this coverage if group health coverage is available through the employer of the spouse of the retired employee.
K.S.A. 12-5040 provides:
 "(a) Each local government which provides an employer-sponsored group health care benefits plan for the employees of the local government shall make coverage under such group health care benefits program available to retired former employees and their dependents, upon written application filed with the clerk or secretary thereof within 30 days following retirement of the employee, as provided by this section. Coverage under the employee group health care benefits plan may cease to be made available upon (1) the retired employee attaining age 65, (2) the retired employee failing to make required premium payments on a timely basis, or (3) the retired employee becoming covered or becoming eligible to be covered under a plan of another employer." (Emphasis added.)
Specifically, you inquire whether the reference to "another employer" includes the employer of the spouse of the retired employee.
A review of the legislative history indicates that the Legislature was concerned about the difficulties in obtaining adequate health care insurance for retirees under the age of 65 who participated in the Kansas Public Employees Retirement System (KPERS).[1] K.S.A. 12-5040 was enacted with the intention of providing for continued participation in group health care plans beyond the 18-month continuation period mandated by the Consolidated Omnibus Budget Reconciliation Act,(COBRA).[2]
COBRA requires certain employers to provide access to group health care insurance to retired employees and their dependents for 18 months after the employee retires.[3] In 1988, when the Legislature considered 1988 Senate Bill No. 464 [later enacted as K.S.A. 12-5040], health care coverage under COBRA could be terminated by the employer before the end of the 18 month period if the retired employee "first becomes, after the date of the election [to continue coverage] a covered employee (as an employee or otherwise) under any other group health plan."[4]
The Senate Special Committee on Ways and Means that considered 1988 Senate Bill No. 464 used COBRA-like language by providing that coverage prior to age 65 would cease upon "the retired employee becoming covered under another group health care benefits plan." However, the League of Kansas Municipalities opposed the bill because of the cost to local governments. It proposed the following amendment which was adopted and incorporated in the final bill:
 "Coverage under the employee group health care benefits plan may cease to be made available upon [the] retired employee becoming covered under another group health care benefits plan or becoming eligible to be covered under a plan of another employer."[5]
You inquire whether the reference to "another employer" includes the employer of the spouse of the retired employee so that if a retired employee becomes covered or eligible to be covered by his or her spouse's employer's health insurance plan, the local government may terminate its obligation to provide access to group health insurance.
In deciding this issue, we reviewed court decisions construing termination of coverage under COBRA, which provides as follows:
 "(2) Period of Coverage. The coverage must extend for at least the period beginning on the date of the qualifying event [i.e. retirement] and ending not earlier than the earliest of the following:
 "(D) [The] date on which the qualified beneficiary [i.e. the retired employee] first becomes, after the date of the election [to continue health insurance coverage] —
 "(i) a covered employee under any other group health plan (as an employee or otherwise), which does not contain any exclusion or limitation with respect to any preexisting condition of such beneficiary. . . ."[6]
In Oakley v. City of Longmont,[7] the City terminated health care coverage for its former employee because the latter was covered by his spouse's employer's health insurance plan prior to his election to continue coverage under COBRA. The 10th Circuit Court of Appeals concluded that the plain meaning of the phrase "after the date of the election" means that a spouse's preexisting group plan cannot be a condition which terminates coverage:
 "Thus, continuation coverage will terminate if the covered employee becomes covered by another policy because he obtains new employment, is reemployed, or remarries. None of these conditions is present here. While the district court believed "or otherwise" included the then-existing coverage of the employee's spouse, Congress intended this language to refer to subsequent events related to the employee's own employment or marital status. Consequently, a qualified beneficiary who receives coverage under the group health plan of a subsequent employer other than the employer providing the continuation coverage would no longer be eligible for continuation coverage. If a qualified beneficiary who is the spouse of a covered employee remarries, the continuation coverage under the covered employee's plan would terminate."[8]
The United States Supreme Court approved the 10th Circuit's analysis inGeissal v. Moore Medical Corp.[9] In Geissal, the employer terminated a former employee's COBRA coverage because on the date the employee elected to continue coverage, he was already covered by his wife's employer's group health insurance plan. The employer argued unsuccessfully that coverage terminated if, at any time after the employee's election to continue coverage, it was discovered that the former employee had coverage under another group health insurance plan.
The Court rejected the employer's argument and concluded that the employer could not terminate Geissal's coverage because Geissal was covered by his wife's insurance before he made his COBRA election and, therefore, he did not "first become" covered under his wife' s insurance plan after the date of his COBRA election.[10]
There are no Kansas appellate decisions that interpret K.S.A. 12-5040
and no legislative history which illuminates whether the reference to "another employer" includes a spouse's employer. COBRA's point of reference for termination of benefits is the point at which the retired employee becomes covered under "any other group health plan" which includes the spouse's employer's health care plan. If the retired employee is covered by the spouse's insurance plan prior to the date the retired employee elects to continue coverage under his or her employer's group plan, the employer cannot deny coverage.
The problem is that K.S.A. 12-5040 refers to a "plan of another employer" rather than "any other group health plan," which Oakley andGeissal conclude includes the plan of a retired employee's spouse's employer. While K.S.A. 12-5040 indirectly affects the dependents of retired employees, the focus of this statute is to protect the retired employee. Therefore, the reference to "another employer" would appear to refer to an employer of a retired employee rather than an employer of the employee's dependent. If the Legislature had wanted to limit the provision's impact on local governments, the Legislature could have done so by defining "another employer" to include the employer of the spouse of a retired employee. However, in the absence of any judicial or legislative guidance, it is our opinion that "another employer" refers only to a retired employee's employer and does not include the employer of the retired employee's spouse.
Very truly yours,
 CARLA J. STOVALL Attorney General of Kansas
 Mary Feighny Assistant Attorney General
CJS:JLM:MF:jm
[1] Report on Kansas Legislative Interim Studies to the 1988Legislature: Proposal No. 36 (December, 1987).
[2] Public Law No. 99-272, 100 Stat. 82, 222 (1986).
[3] Id.
[4] 29 U.S.C. § 1162.
[5] 1988 Senate Bill No. 464, as amended by Senate Committee on Ways and Means (Feb. 10, 1988) (strikeouts and underlining in amended bill.)
[6] 29 U.S.C. § 1162(2)(D)(i) (emphasis added).
[7] 890 F.2d 1128 (10th Cir. 1989).
[8] Id. at 1132 (emphasis added).
[9] 524 U.S. 74, 118 S.Ct. 1869, 141 L.Ed.2d 64 (1998).
[10] Id., 524 U.S. at 82.